1
2
3
4          UNITED STATES DISTRICT COURT
5          NORTHERN DISTRICT OF CALIFORNIA
6
7   MICHELLE K., et al.,                    Case No.  22-cv-01202-AMO
8                    Plaintiffs,
9          v.                              ORDER GRANTING IN PART
                                           AND DENYING IN PART
10  COUNTY OF SONOMA, et al.,               MOTIONS TO DISMISS
11                   Defendants.            Re: Dkt. Nos. 220, 222

12
13          Before this Court are two motions to dismiss brought by (1) Defendant County of Sonoma

14  and County Social Workers; and (2) Defendants State of California and Amy Lafferty.[1]  Having

15  read the parties' papers and carefully considered their arguments therein and those made at the

16  hearing, together with the relevant legal authority, and good cause appearing, the Court hereby

17  **GRANTS** in part and **DENIES** in part the motions, for the following reasons.

18  **I.      FACTUAL BACKGROUND[2]**

19          In September of 2006, the County of Sonoma ("County") removed Plaintiffs Michelle K.,

20  P.K., and Kristin K. from the custody of their biological parents.  Third Amended Complaint

21  ("TAC") (ECF 209) ¶ 32.  Kristin K. was placed in the custody of her aunt, where she remained

22

23  [1] The instant motions (ECF 220 and 222) are substantively identical to motions to dismiss
    previously filed (ECF 136 and 140) challenging the Second Amended Complaint (ECF 88).  The
24  Court held a hearing on those motions on January 25, 2024.  While the Court had those motions
    under submission, the parties entered into a stipulation to allow Plaintiffs to amend their
25  complaint.  ECF 214.  The operative complaint, the Third Amended Complaint, was filed on May
    16, 2024.  ECF 209.  The renewed motions to dismiss, which are the subject of this Order,
26  followed on June 14, 2024 (ECF 220) and June 18, 2024 (ECF 222).

27  [2] These facts are taken from the Plaintiffs' Third Amended Complaint, as the Court must accept
    Plaintiffs' allegations as true and construe the pleadings in the light most favorable to them.  *See*
28  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) (citation
    omitted).

United States District Court
Northern District of California

while she was a minor.  TAC ¶ 32.  The County placed Michelle K. (age 3), P.K. (age 2), and their sister Kaya K. (age 4) with Defendants Jose and Gina Centeno on October 20, 2006, despite a January 2006 report of suspected child abuse involving two other children the Centenos fostered. TAC ¶ 34.  Between October 20, 2006, and September 24, 2008, the County of Sonoma (the "County"), the State of California (the "State"), and the foster care agency TLC Child and Family Services ("TLC") received frequent reports from the children's biological extended family and others that the children were being physically and emotionally abused, including that they were seen with bruising on their arms and legs, and that they did not want to leave family visits. TAC ¶¶ 35-36.

On September 24, 2008, the Centenos legally adopted Michelle K., P.K., and Kaya. TAC ¶ 39.  Prior to the adoption, the County, State, and TLC failed to conduct full background checks on the Centenos, properly inspect their home, assess the well-being of the Centenos' three biological children, speak with Kaya, Michelle K., and P.K. outside of the presence of the Centenos about the care they were receiving, or investigate allegations of abuse made by the children's maternal aunt and Kristin K.  TAC ¶ 40.  In June of 2009 and March of 2010, the County placed another foster child, Pablo, and his infant sister, Maci, with the Centenos, without evaluating the safety of the children already living there.  TAC ¶¶ 41-44.

In September of 2010, the County received multiple reports from teachers that Mr. Centeno physically abused the children, and that Kaya, Michelle K., and P.K. were coming to school with unexplained bruises.  TAC ¶¶ 46, 49.  The teachers' reports, and interviews conducted with Michelle K., P.K., and Kaya by County Social Worker Jacqueline Johnson, revealed that the Centenos hit the children with their fists, belts, wooden spoons, and hairbrushes; that the Centenos called them names; that the kids were visibly upset about being picked up and were terrified of their adoptive parents; that P.K. came to school with a mark on his neck; that Ms. Centeno hit Michelle K. in the face, knocking her tooth out; that Mr. Centeno kicked Michelle K.; and that the children were punished by being forced to stand holding something heavy over their heads in the shower or stand in the corner with their arms up.  TAC ¶¶ 48-50.  On September 17, 2010, Johnson met with the Centenos, who asserted that Kaya had sexualized behaviors and that the

1    three children were liars.  TAC ¶ 51.  They admitted to taping gloves on Kaya's hands at night, to

2    making the children have time outs in the shower, and to putting alarms on the beds to alert when

3    the children moved.  TAC ¶¶ 51, 82.

4         Johnson wrote a report noting her deep concerns about the children's welfare, including

5    that the children were in "dire need of intensive therapy immediately."  TAC ¶¶ 52-53.  Johnson

6    noted that the children's statements were consistent and that she believed the parents to be

7    overwhelmed.  TAC ¶¶ 52-53.  Johnson discussed her report with her fellow County Social

8    Workers Monisha Sashital and Bob Harper.  TAC ¶ 53.  This information was provided to TLC,

9    the State, and Amy Lafferty, the adoption services representative in charge of the adoption of

10   Pablo and Maci.  TAC ¶ 54.  Johnson filed an Investigation Narrative after the investigation,

11   substantiating allegations of emotional abuse against the Centenos, finding that the interviews

12   indicated a pattern of harsh physical punishment and verbal abuse, and that she believed the

13   Centenos were overwhelmed and should not care for Pablo and Maci.  TAC ¶ 55.

14        On September 24, 2010, Johnson again met with Ms. Centeno but did not meet with Mr.

15   Centeno.  TAC ¶ 56.  Johnson "expressed her belief" that the Centenos were overwhelmed and

16   that she was concerned about their frustration level, volatility, and possible burnout.  TAC ¶¶ 56-

17   57.  Johnson consulted with fellow County Social Workers Linda Morrissey, Leslie Winters, and

18   Sashital, and expressed concerns that Michelle K., P.K., and Kaya were "high risk" children, and

19   that this risk would be increased with the adoption of the two younger children.  TAC ¶ 57.  A few

20   days later, Defendants Lafferty and Johnson learned that Ms. Centeno removed her children from

21   school and after-school programs.  TAC ¶ 58. [3]  Nobody from any agency took any further action

22   to check on the welfare of Kaya, Michelle K., and P.K.  TAC ¶ 59.  The Centenos finalized their

23   adoption of Pablo and Maci on August 19, 2011.  TAC ¶ 60.

24        Between August of 2011 and late 2018, the Centenos shackled Kaya, Michelle K., and

25   P.K. to their beds with alarms to prevent them from leaving and kept them in cages.  TAC ¶ 62.

26   Kaya has not been seen since 2012.  TAC ¶ 62.  In late 2018 and early 2019, there were multiple

27

28   _____
     [3] The TAC does not specify which children, but the Court understands this to mean that Ms.
     Centeno removed Kaya, P.K., and Michelle K. from school.

United States District Court
Northern District of California

reports to the County related to suspected child abuse of Maci and Pablo as well as the children's potential danger to themselves and others.  TAC ¶¶ 63-68.  On October 31, 2018, an unidentified individual submitted a Suspected Child Abuse Report ("SCAR") to the County and County Social Worker De La Cruz, which listed the history of the Centenos' emotional and physical abuse toward Michelle K., P.K., and Kaya.  TAC ¶¶ 63-64.  An emergency report was shared with the County on February 7, 2019 regarding concerning behaviors by Pablo and Maci.  TAC ¶ 65. County Social Workers interviewed Ms. Centeno but failed to inquire about the whereabouts of Kaya, Michelle K., or P.K. and failed to tour the home, despite Ms. Centeno stating that she was doing everything she could to take care of her "two children" when she had five adopted children. TAC ¶ 66.  County Social Workers found insufficient evidence of abuse or safety concerns, took no further action, and closed the investigations.  TAC ¶¶ 64, 68.  Around the same time, the Centenos traveled to Guanajuato, Mexico, and left Michelle K. and P.K. with a distant relative of Mr. Centeno.  TAC ¶ 70.

In late March of 2019, the County received a report of multiple bruises on Maci's arm. TAC ¶ 71.  A County report listed the names of all the children who were supposed to be in the care of the Centenos, but County Social Workers Andrea Kroeze and D. Romero "evaluated out"[4] the report, stating that there were no concerns for Maci in the home.  TAC ¶ 71.  Nobody questioned Maci or Ms. Centeno or inquired about the other children in the home.  TAC ¶ 71.  An additional report of abuse on July 23, 2019 was handled similarly by County Social Worker Deborah Gilday.  TAC ¶ 72.  In October of 2019 and February of 2020, police officers responded to the Centeno house on multiple occasions due to Maci's threats to kill herself and Pablo throwing items.  TAC ¶¶ 73-75.  In a January 2020 emergency report, Maci disclosed that Mr. Centeno hit her, but the County "evaluated out" the report.  TAC ¶ 74.

On June 30, 2020, an American citizen discovered Michelle K. and P.K. in Mexico. TAC ¶ 76.  The children were found with a woman who reported that they had been left with her.

---

[4] The TAC does not define this term.  The Court draws the reasonable inference that it means the social worker closed the investigation or took no additional action.

TAC ¶ 76.  The woman recounted to the American citizen that Michelle K. disclosed that she had been "kidnapped for 8 years" before being brought to Mexico, that her father had raped her while holding her hostage, and that Michelle K. and P.K. had been sexually and physically abused for years.  TAC ¶ 76.  Mexican social services interviewed and examined the children, and a sexual abuse examination corroborated this narrative.  TAC ¶ 77.

The Centenos were arrested on August 19, 2020, and have been charged with felony torture and other crimes, including kidnapping and assault.  TAC ¶¶ 85-87.  Mr. Centeno was charged with nine additional felony crimes for his suspected sexual abuse.  TAC ¶¶ 85-86.  Ms. Centeno is now deceased.  TAC ¶ 23.

## II.     PROCEDURAL BACKGROUND

On February 25, 2022, Plaintiffs Michelle K. and P.K., through their guardian ad litem, and Plaintiff Kristin K. (collectively, "Plaintiffs") filed suit.  Plaintiffs filed the Third Amended Complaint ("TAC"), the operative complaint, on May 16, 2024.  ECF 209.  Plaintiffs allege 19 causes of action related to the abuse they suffered at the hands of the Centenos.[5]  They bring claims against Defendants Jose and Gina Centeno; the County of Sonoma; County Social Workers Josephine McCay, Frederick Jones, Monisha Sashital, Linda Morrisey, Leslie Winters, Janet Taylor, De La Cruz, Andrea Kroeze, Deborah Gilday, D. Romero, the Estate of Jacqueline Johnson, and the Estate of Bob Harper;[6] the State of California; Amy Lafferty; TLC Child & Family Services;[7] the City of Rohnert Park; Officer Gonzales; and Officer Groat.[8]

On June 14, 2024, Amy Lafferty and the State of California moved to dismiss the TAC.

---

[5] On January 18, 2024, Plaintiffs filed an ex parte motion for an extension of time to serve deceased defendants.  ECF 170.  At the January 25, 2024 hearing, the Court denied the motion to substitute the deceased defendants, social workers Jacqueline Johnson and Bob Harper, who had never been served.  ECF 178.  Plaintiffs have since amended the complaint, naming the estates of the deceased defendants.  ECF 209.  The Court therefore terminates as moot the motion for extension of time to serve the deceased defendants.

[6] The TAC does not include a first name for De La Cruz or D. Romero.

[7] TLC answered the TAC on June 28, 2024.  ECF 232.

[8] The City of Rohnert Park, Officer Gonzales, and Officer Groat have since been dismissed from the case.  *See* ECF 198.

1  ECF 220.  On June 18, 2024, the County of Sonoma and County Social Workers also moved to

2  dismiss the SAC.  ECF 222.

3  ### III.    LEGAL STANDARD

4         Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint may be

5  dismissed for failure to state a claim for which relief may be granted.  Fed. R. Civ. P. 12(b)(6).

6  Rule 12(b)(6) requires dismissal when a complaint lacks either a "cognizable legal theory" or

7  "sufficient facts alleged" under such a theory.  *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201,

8  1208 (9th Cir. 2019) (citation omitted).  Whether a complaint contains sufficient factual

9  allegations depends on whether it pleads enough facts to "state a claim to relief that is plausible on

10  its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550

11  U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows

12  the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

13  *Id.* at 678.

14         When evaluating a motion to dismiss, the court "accept[s] factual allegations in the

15  complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving

16  party."  *Manzarek*, 519 F.3d at 1031.  However, "allegations in a complaint . . . may not simply

17  recite the elements of a cause of action [and] must contain sufficient allegations of underlying

18  facts to give fair notice and to enable the opposing party to defend itself effectively."  *Levitt v.*

19  *Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014) (citations omitted).  The Court may dismiss a

20  claim "where there is either a lack of a cognizable legal theory or the absence of sufficient facts

21  alleged under a cognizable legal claim."  *Hinds Invs., L.P. v. Angioli*, 654 F.3d 846, 850 (9th Cir.

22  2011).

23  ### IV.    COUNTY OF SONOMA AND SOCIAL WORKERS' MOTION TO DISMISS

24         Defendants County of Sonoma and the County Social Workers (collectively, "County

25  Defendants") move to dismiss counts one through four, six through ten, 13, 18, and 19.  ECF 222

26  ("County Mot.").  County Defendants argue that the social workers are immune from Section

27  1983 liability; Plaintiffs fail to allege deliberate indifference; Plaintiffs fail to allege a County

28  policy or practice under *Monell*; Plaintiffs fail to allege the breach of any mandatory duties; and

United States District Court
Northern District of California

1 | Plaintiffs fail to allege IIED or NIED.  The Court addresses each argument in the order presented.

2 |       **A.**      **Section 1983 Claims** (Counts 1-3 by Michelle K. and P.K. against County Social

3 |       Workers)

4 |       Michelle K. and P.K. bring three claims against the County Social Workers under the

Fourteenth Amendment for failure to adequately respond to or investigate reports of abuse and for

providing false information to a court.  "The Fourteenth Amendment substantive due process

clause protects a foster child's liberty interest in social worker supervision and protection from

harm inflicted by a foster parent." *Tamas v. Dep't of Soc. & Health Servs.*, 630 F.3d 833, 842 (9th

Cir. 2010).  Defendants argue that they have absolute immunity, qualified immunity, and that

Plaintiffs fail to allege deliberate indifference.  The Court takes up the three arguments in turn.

                **1.**      **Absolute Immunity**

      "Defendants in § 1983 suits are generally entitled to only immunities that existed at

common law." *Rieman v. Vazquez*, 96 F.4th 1085, 1090 (9th Cir. 2024).  "[S]ocial workers are

not afforded absolute immunity for their investigatory conduct, discretionary decisions or

recommendations." *Cox v. Dep't of Soc. & Health Servs.*, 913 F.3d 831, 837 (9th Cir. 2019)

(quoting *Tamas*, 630 F.3d at 842).  Nor are they entitled to absolute immunity from claims relating

to "investigative or administrative" activity.  *Hardwick v. Cnty. of Orange*, 844 F.3d 1112, 1115

(9th Cir. 2017) (citation omitted).  Courts "grant[] state actors absolute immunity only for those

functions that [are] critical to the judicial process itself," such as "initiating a prosecution." *Miller

v. Gammie*, 335 F.3d 889, 896 (9th Cir. 2003) (en banc) (quoting *Imbler v. Pachtman*, 424 U.S.

409, 431 (1976)).  Social workers may enjoy absolute immunity related to "discretionary, quasi-

prosecutorial decisions to institute court dependency proceedings to take custody away from

parents." *Rieman*, 96 F.4th at 1090 (citation omitted).  Such immunity is only available if the

social worker's "activity or function" is "part and parcel of the presenting state's case as a generic

advocate." *Hardwick*, 844 F.3d at 1115.

      Plaintiffs allege that County Social Workers failed to adequately investigate and respond to

reports of abuse.  County Social Workers do not explain how the failure to adequately investigate

is part of the quasi-judicial or quasi-prosecutorial functions of their jobs.  *See* County Mot. at 11-

United States District Court
Northern District of California

12.  Indeed, social workers are not entitled to absolute immunity for investigations or recommendations.  *See Cox*, 913 F.3d at 837.  Instead, County Social Workers argue that, pursuant to California case law and statutes, absolute immunity protects the investigation of claims of child abuse.  County Mot. at 10-11 (citing Cal. Gov't Code §§ 820.1, 820.2 and *Alicia T. v. County of Los Angeles*, 222 Cal. App. 3d 869 (1990)).  However, state statutory immunities do not apply to claims asserted under Section 1983.  *Martinez v. State of Cal.*, 444 U.S. 277, 284 n.8 (1980) ("Conduct by persons acting under color of state law which is wrongful under 42 U.S.C. § 1983 or § 1985(3) cannot be immunized by state law."); *Wallis v. Spencer*, 202 F.3d 1126, 1144 (9th Cir. 2000) ("Immunity under § 1983 is governed by federal law; state law cannot provide immunity from suit for federal civil rights violations.").

Accordingly, County Social Workers are not entitled to absolute immunity in connection with the first three claims.

### 2.        Qualified Immunity

County Social Workers also argue that they are entitled to qualified immunity for claims arising from interview decisions, placement decisions, and adoption decisions, again relying on California statutory immunity under California Government Code Section 820.2.  County Mot. at 11-12.  As explained above, "[i]mmunity under § 1983 is governed by federal law; state law cannot provide immunity from suit for federal civil rights violations." *Wallis*, 202 F.3d at 1144 (citing cases).  Accordingly, Government Code § 820.2 cannot protect County Social Workers from Section 1983 liability.  *See id.*

County Social Workers, in their bare reliance on state law immunity, fail to establish that they are entitled to qualified immunity under federal law.  To the extent County Social Workers rely on federal law, they also fail to show at this stage they are entitled to qualified immunity.  Indeed, the Ninth Circuit disfavors determining qualified immunity claims at the motion to dismiss stage.  *See Keates v. Koile*, 883 F.3d 1228, 1234 (9th Cir. 2018) ("[d]etermining claims of qualified immunity at the motion-to-dismiss stage raises special problems for legal decision making") (citing *Wong v. United States*, 373 F.3d 952, 956-57 (9th Cir. 2004)).  Accordingly, the Court finds that the facts as pleaded are not sufficiently clear to show that County Defendants are

8

United States District Court
Northern District of California

entitled to qualified immunity at this stage.  Of course, "[o]nce an evidentiary record has been developed through discovery, defendants will be free to move for summary judgment based on qualified immunity," if appropriate.  *Keates*, 883 F.3d at 1240.

### 3. Deliberate Indifference

County Defendants also move to dismiss Plaintiffs' Section 1983 due process claims because Plaintiffs have not adequately pled deliberate indifference.  County Mot. at 13-14.  "To violate due process, state officials must act with such deliberate indifference to the liberty interest that their actions 'shock the conscience.'  Conduct that 'shocks the conscience' is deliberate indifference to a known . . . [or obvious] danger."  *Cox*, 913 F.3d at 837 (quoting *Tamas*, 630 F.3d at 844).  Deliberate indifference requires "a showing of an objectively substantial risk of harm and a showing that the officials were subjectively aware of facts from which an inference could be drawn that such a risk existed and that either the official actually drew that inference or that a reasonable official would have been compelled to draw that inference."  *Id.* (internal quotation marks and citation omitted).

County Defendants argue that Plaintiffs only allege what County Social Workers should or could have known or done, not that County Social Workers were subjectively aware of facts from which an inference of a substantial risk of serious harm could be drawn.  County Mot. at 14. County Defendants are incorrect.  Specifically, school staff made four reports to the County in a span of a single week.  TAC ¶ 49.  Teachers reported being deeply concerned about Michelle K., P.K., and Kaya, including that they were coming to school with unexplained bruises.  TAC ¶¶ 46, 48-49.  One teacher reported that P.K. told her that the Centenos spanked and hit him, Kaya, and Michelle on their bare bottoms with belts and wooden spoons.  TAC ¶¶ 46, 48-50.  A reporting party told the County that P.K. and Kaya told her that they were afraid of their parents, were called names, told that they would "get their asses kicked," and were visibly upset daily about being picked up from school.  TAC ¶ 48.  County Social Workers learned that P.K. came to school with a red mark around his neck, and that Michelle K. reported being spanked with a black belt. TAC ¶ 49.  County Social Worker Jacqueline Johnson interviewed P.K., Michelle K., and Kaya, who reported that their mother hit them in the face with her hands, a hairbrush, wooden spoons,

and belts, made them stand in the corner with their hands up, and forced them to stay in bed for weeks.  TAC ¶¶ 46, 50.  The Centenos admitted to County Social Worker Johnson that they taped gloves on Kaya's hands at night, gave time outs in the shower, and put alarms on the children's beds to see if they moved.  TAC ¶ 51.  Johnson also discussed the investigation with County Social Workers Sashital and Harper, and advised that Michelle, P.K., and Kaya's statements were consistent, and that she believed their allegations were valid and that the family was in need of strong support and the children in "dire need of intensive therapy immediately."  TAC ¶ 53.

Plaintiffs thus sufficiently allege that County Social Workers disregarded facts that would "compel an inference that there existed an objectively substantial risk that [the Centenos] would physically harm [the children]."  *See Cox*, 913 F.3d at 838.  Plaintiffs also specify which social workers were assigned to investigate the reports, which social workers were consulted, and the evidence they learned about the abuse occurring at the time.  *See* TAC ¶¶ 34-56.  They allege that Gina Centeno removed her children from school shortly after the reports of abuse, and that after this, County Social Workers failed to check on the welfare of the children.  TAC ¶¶ 58-59.  Moreover, Plaintiffs allege that County Social Workers reported on multiple occasions that they believed the Centenos were overwhelmed, TAC ¶¶ 52-53, 55, 65, and Johnson wrote a report following her meeting with the Centenos and Plaintiffs that the interviews "indicated a pattern of harsh physical punishment and verbal abuse."  TAC ¶ 55.  The County did not take any further action.  TAC ¶ 59.

These allegations are more than "mere hunches, gut feelings, and speculations" about what the Centenos "might do."  *See Cox*, 913 F.3d at 838.  Indeed, they show that the County learned about allegations of abuse but failed to properly investigate or protect the children.  *Cf. Momox-Caselis v. Donohue*, 987 F.3d 835, 847 (9th Cir. 2021) (finding insufficient allegations to support a due process claim where there was "no evidence that the Juarez-Paez family was consistently overwhelmed by their foster care duties").  It is hard to imagine what additional factual allegations the County seeks at this stage.  Accordingly, the Court **DENIES** the motion to dismiss the first and second causes of action.

However, as to the third cause of action for providing false information to the court,

1    Plaintiffs' allegations are entirely conclusory.  Plaintiffs merely allege that Defendants "provid[ed]

2    knowingly wrongful and false information to the Court," TAC ¶ 106, without identifying what the

3    information was, in which court Defendants presented false information, or how the information

4    was known to be wrong by the Defendants.  Such cursory allegations are insufficient to plead

5    deliberate indifference.  The Court therefore **GRANTS** the motion to dismiss the third cause of

6    action with leave to amend.

7        **B.**    ***Monell*** **Claim** (by Michelle K. and P.K. against County)

8        A government entity may be liable under Title 42 U.S.C. § 1983 where a "policy, practice,

9    or custom" was the "moving force" behind a constitutional violation.  *Dougherty v. City of*

10   *Covina*, 654 F.3d 892, 900 (9th Cir. 2011); *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691

11   (1978).  To establish government liability for an improper custom, there must be "practices of

12   sufficient duration, frequency and consistency" rather than "isolated or sporadic incidents."

13   *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996); *see Navarro v. Block*, 72 F.3d 712, 714 (9th

14   Cir. 1995) ("[p]roof of random acts or isolated events is insufficient to establish custom").  "The

15   line between 'isolated or sporadic incidents' and 'persistent widespread conduct' is not clearly

16   delineated." *Lemus v. Cty. of Merced*, 2016 WL 2930523, at *4 (E.D. Cal. May 19, 2016), *aff'd*,

17   2017 WL 4772557 (9th Cir. 2017); *see Nelson v. City of Los Angeles*, 2015 WL 1931714, at *10-

18   11, 18 (C.D. Cal. Apr. 28, 2015) (denying motion to dismiss *Monell* claim where plaintiffs alleged

19   numerous instances of jail guards retaliating against them for reporting misconduct); *compare*

20   *Meehan v. Los Angeles County*, 856 F.2d 102, 107 (9th Cir. 1988) (two incidents not sufficient to

21   establish custom) and *Davis v. Ellensburg*, 869 F.2d 1230, 1233 (9th Cir. 1989) (manner of one

22   arrest insufficient to establish policy) *with Motley v. Smith*, 2016 WL 3407658, at *9 (E.D. Cal.

23   June 20, 2016) (multiple incidents of police denying protection to abused women because of their

24   gender were sufficient to allege widespread custom).

25       Plaintiffs allege that the County had the following policies, practices, and customs:

26   1.  "The policy of placing children with foster/adoptive parents without conducting a thorough
27       and complete investigation of the prospective foster/adoptive parents, their home, and the
         children living within that home."

28

United States District Court
Northern District of California

2.  "The policy of placing multiple children with foster/adoptive parents without interviewing and examining the children already placed with such parents."

3.  "The policy of conducting inadequate investigations of reports of abuse and neglect.t"

4.  "The policy of deliberate indifference to children designated as 'high-risk.'"

5.  "The policy of limiting child abuse investigations to the subject of the report, and deliberate indifference to the status of other children living in the home."

6.  Deliberate indifference toward training, supervision, and discipline.

TAC ¶ 110; *see* ECF 227 at 16-17.  The County argues that an entity cannot simultaneously have an internal policy not to investigate claims of abuse and be required to follow official guidelines and rules mandating safe and responsible placement.  County Mot. at 16-17.  However, the County does not cite any legal authority to support this argument and does not explain how the existence of mandatory rules precludes the County from having the internal practices or customs alleged here.  The Court thus declines to find that these allegations are incongruous.

Plaintiffs have alleged at least five instances when the County limited child abuse investigations to the subject of the report (fifth policy).  *See* TAC ¶¶ 63-66, 71-72, 74.  Plaintiffs also allege that the County conducted inadequate investigations of reports of abuse and neglect (the third policy) on multiple occasions.  TAC ¶¶ 45-58.  At this stage, these are sufficient to allege a pattern or practice that caused Plaintiffs' constitutional injury.  *See Motley*, 2016 WL 3407658, at *9; *Nelson*, 2015 WL 1931714, at *10-11, 18.  The Court therefore **DENIES** the motion to dismiss the *Monell* claim against the County.

However, Plaintiffs have not offered factual allegations that the first, second, and fourth policies occurred on more than one or two instances.  *See Meehan*, 856 F.2d at 107; *Davis,* 869 F.2d at 1233.  Similarly, Plaintiffs fail to allege how or in what way County Social Workers were inadequately trained, supervised, or disciplined (sixth policy).  If Plaintiffs seek to bring *Monell* claims under these theories, they must allege additional facts.

C.      **State Law Claims**

County Defendants move to dismiss the state law claims for breach of mandatory duty, intentional infliction of emotional distress ("IIED"), and negligent infliction of emotional distress

United States District Court
Northern District of California

1  ("NIED"). The Court addresses the arguments in the order presented by the parties.

2  ### 1.  Breach of Mandatory Duties

3  County Defendants move to dismiss the breach of mandatory duty claims, arguing that

4  they are absolutely immune from liability and that Plaintiffs fail to state a claim. The Court first

5  addresses statutory immunity as it is a threshold question, before turning to the rest of County

6  Defendants' arguments.

7  ### a.  Statutory Immunity

8  County Defendants argue that they are immune from the breach of mandatory duty claims

9  because County Social Workers have statutory immunity under California Government Code

10  Section 820.2 and the County is immune pursuant to section 815.2. County Mot. at 10.

11  Defendants have failed to meet their burden to dismiss on these bases.

12  As to the first argument, section 820.2 immunizes a public employee from liability

13  "resulting from his act or omission where the act or omission was the result of the exercise of the

14  discretion vested in him, whether or not such discretion be abused." Cal. Gov. Code § 820.2.

15  Immunity under section 820.2 attaches only after the public employee "prove[s] that . . . in

16  deciding to perform (or not perform) the act which led to [the] plaintiff's injury, [the employee]

17  *consciously exercised discretion* in the sense of assuming certain risks in order to gain other policy

18  objectives." *Lopez v. S. Cal. Rapid Transit Dist.*, 40 Cal. 3d 780, 794 (1985) (citation omitted)

19  (emphasis in original). Indeed, "[t]he fact that an employee normally engages in 'discretionary

20  activity' is irrelevant if, in a given case, the employee did not render a considered decision." *Id.*

21  (citation omitted). Government defendants thus "have the burden of establishing that they are

22  entitled to immunity for an actual policy decision made by an employee who 'consciously

23  balanc[ed] risks and advantages.' " *AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 639

24  (9th Cir. 2012); *see id.* County Social Workers argue that they are immune from allegations that

25  they failed to respond to or investigate reports of abuse. County Mot. at 12-13, 18. However,

26  County Social Workers fail to allege that they made considered policy decisions and consciously

27  exercised discretion in their actions. Indeed, mandatory duties by their nature are "obligatory,

28  rather than merely discretionary or permissive," and "must require . . . that a particular action be

United States District Court
Northern District of California

1    taken or not taken." *San Mateo Union High Sch. Dist. v. Cty. of San Mateo*, 213 Cal. App. 4th

2    418, 428 (2013) (citation omitted).  Accordingly, County Social Workers have not met the burden

3    of establishing discretionary immunity at this stage.

4         Defendants also contend that the County is not liable under Government Code § 815.2.

5    County Mot. at 10.  Pursuant to section 815.2, a public entity is liable for injury "proximately

6    caused by an act or omission of an employee," but is not liable where the employee has been

7    found to be immune.  Cal. Gov't Code § 815.2(a)-(b).  The County argues that it is protected from

8    liability because the County Social Workers are immune.  County Mot. at 10.  However, the Court

9    rejected County Social Workers' argument that they are entitled to statutory immunity under

10   section 820.2.  Accordingly, the County is not entitled to immunity under section 815.2.  *See*

11   *Sanderlin v. City of San Jose*, 2022 WL 913055, at *14 (N.D. Cal. Mar. 29, 2022) (rejecting a

12   city's argument that it was entitled to immunity under section 815.2 where the court found that its

13   employees were not statutorily immune).

14        Accordingly, County Defendants' motion to dismiss all state claim claims on the basis of

15   statutory immunity is **DENIED.**

16        The Court now takes up Defendants' arguments about Plaintiffs' failure to state a claim for

17   breach of mandatory duty.

18                   **b.    Failure to State a Claim for Breach of Mandatory Duties**

19                        **(against County and Social Workers)**

20        California Government Code section 815.6 provides that a public entity is liable for injury

21   where the entity is "under a mandatory duty imposed by an enactment that is designed to protect

22   against the risk of a particular kind of injury . . . [and that injury is] proximately caused by its

23   failure to discharge the duty . . . [.] Cal. Gov't Code § 815.6.  Three discrete requirements "must

24   be met before governmental entity liability may be imposed under [California] Government Code

25   section 815.6: (1) an enactment must impose a mandatory duty; (2) the enactment must be meant

26   to protect against the kind of risk of injury suffered by the party asserting section 815.6 as a basis

27   for liability; and (3) breach of the mandatory duty must be a proximate cause of the injury

28   suffered." *San Mateo Union High Sch. Dist.*, 213 Cal. App. 4th at 428 (quotation marks and

United States District Court
Northern District of California

citations omitted).  The first element requires that "the enactment at issue be obligatory, rather than merely discretionary or permissive, in its directions to the public entity; it must require, rather than merely authorize or permit, that a particular action be taken or not taken."  *Id.* (quoting *Haggis v. City of Los Angeles*, 22 Cal. 4th 490, 498 (2000)); *see also O'Toole v. Superior Court*, 140 Cal. App. 4th 488, 510 (2006) (finding that a statute prohibiting certain conduct but not setting forth guidelines or rules did not create a mandatory duty); *Guzman v. County of Monterey*, 46 Cal. 4th 887, 898 (2009) (recognizing that "[c]ourts have construed this first prong rather strictly, finding a mandatory duty only if the enactment affirmatively imposes the duty and provides implementing guidelines") (internal citations omitted).  Therefore, a provision of law requiring an action without specific guidance on its implementation is not sufficient to create a mandatory duty.  *See Haggis*, 22 Cal. 4th at 498-99.

County Defendants first contend that Plaintiffs cannot assert mandatory duty claims against individuals.  County Mot. at 18.  County Defendants cite no authority for this assertion.  Indeed, the California Supreme Court has explained that a public employee is "liable for injury caused by his act or omission to the same extent as a private person" but is "not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of discretion vested in him . . . [.]"  *B.H. v. Cnty. of San Bernardino*, 62 Cal. 4th 168, 179-180 (2015) (quoting Cal. Gov't Code §§ 820(a), 820.2).  Accordingly, Plaintiffs may bring breach of mandatory duty claims against the County Social Workers.

County Defendants also argue that the breach of mandatory duty claims fail because each of the statutes cited do not establish mandatory duties but instead allow for the "discretionary decision-making of social workers."  County Mot. at 19.  The Court addresses each claim in turn.

### i.      Sixth Claim

Plaintiffs' sixth cause of action alleges that County Defendants breached mandatory duties under California Adoption Program Regulations 35177, 35181, and 35183, Child Welfare Services Regulation 31-405, and Welfare & Institutions Code Section 16507.5.  The Court addresses whether Plaintiffs have alleged a claim for each statute.

Adoption Program Regulations 35177, 35181, and 35183

1        California Adoption Regulations 35177 and 35183 require an adoption agency to conduct

2    face-to-face interviews with adoptive applicants and individuals residing in the adoptive

3    household.  Section 35177 states that "[t]he agency shall assess each applicant as specified in

4    Sections 35181 or 35183."  Section 35181 specifies that "[t]he agency shall have at least 3

5    separate face-to-face contacts with each applicant for the purpose of intervening the [adoptive]

6    applicant for assessment" and that the contacts "shall include, at least, all of the following:"

> (A) At least one interview with the applicant in the home.
> (B) A separate face-to-face interview with each applicant.
> (C) A joint interview when there are two applicants.
> (D) A face-to-face interview with all other individuals residing in the home.
> (E) Additional interviews as necessary.

Cal. Code Regs. § 35181(a).  Section 35183 permits abbreviated assessments under certain

circumstances and states that "[t]he agency shall have at least one face-to-face contact with each

applicant for the purpose of interviewing the applicant for the assessment."  Cal. Code Regs. §

35183(b).

        Plaintiffs allege that County Defendants violated these regulations because they failed to

conduct the required interviews.  TAC ¶ 127.  County Defendants argue that Section 35181 does

not specify how heavily the agency must weigh the interviews in the adoption decision and

Section 35183 merely provides for situations in which an abbreviated assessment may be

completed.  County Mot. at 19-20.  While Sections 35181 and 35183 provide for discretion in

assessing the adoptive applicant (e.g., "the agency shall consider the following *factors* for the

applicant" (emphasis added)), conducting a face-to-face interview for adoptive applicants is not

discretionary.  *See* Cal. Code Regs. §§ 35181(a), 35183.  Section 35177 mandates that the agency

assess adoptive applications as specified in Sections 35181 or 35183.  County Defendants have not

pointed to any language or caselaw suggesting otherwise.  These sections provide a mandatory

duty which Plaintiffs have sufficiently alleged that Defendants breached by failing to conduct

face-to-face interviews of all adoptive applicants.  TAC ¶¶ 37, 40, 127.

Child Welfare Services Regulation 31-405.12

        Chapter 31-405 of the Child Welfare Services Regulation requires that a social worker

United States District Court
Northern District of California

"shall . . . [g]ive preferential consideration for placement of the child to an adult who is a grandparent, aunt, uncle or sibling of the child."  Chapter 31-405.12.  County Defendants contend that this statute provides discretion as to the consideration and determination of the child's placement, for example by not mandating what "specific actions" social workers should take.  County Mot. at 21.  The Court agrees.  Chapter 31-405 of the Child Welfare Services Regulation does not require a social worker to take a "particular action" or provide "implementing guidelines or rules" to facilitate a statutory requirement.  *Guzman*, 46 Cal. 4th at 898; *see de Villers v. Cnty. of San Diego*, 156 Cal. App. 4th 238, 261 (2007) (finding no mandatory duty where the predicate enactment "confers on government officials the discretion to evaluate and decide how best to implement the required security") (citation omitted).  A statute must require that "a particular action be taken or not taken" and that action cannot involve the exercise of discretion.  *Haggis*, 22 Cal. 4th at 498.  Plaintiffs do not point to any language in the regulation mandating a particular action.  *See* ECF 227 at 19.  Accordingly, the Court cannot find that this statute establishes a mandatory duty.

Welfare & Institutions Code Section 16507.5

Similarly, California Welfare & Institutions Code Section 16507 provides for discretion.  It states that when a minor is separated from their family, the county welfare department or adoption agency social worker "shall make any and all *reasonable and necessary provisions* for the care, supervision, custody, conduct, maintenance, and support of the minor."  Cal. Welf. & Inst. Code § 16507.5 (emphasis added).  The statute does not provide what those "reasonable and necessary provisions" entail, leaving it to the discretion of the social worker.  *See Haggis*, 22 Cal. 4th at 498 (holding that a public officer must have been required to take a particular action that does not involve the exercise of discretion).  This section does not provide a mandatory duty.

The Court thus **DENIES** the motion to dismiss count six to the extent it relies on California Adoption Regulations and **GRANTS** the motion to dismiss as to the Child Welfare Services Regulation and Welfare and Institution Code.

### ii.      Seventh Claim

County Defendants move to dismiss Plaintiffs' seventh claim that the County Defendants

1   breached mandatory duties under California Welfare & Institutions Code Section 328 and

2   California Penal Code 11146, which the Court takes up in turn.

3   California Welfare & Institutions Code § 328

4          California Welfare & Institutions Code Section 328 states that if a social worker "has

5   cause to believe that there was or is within the county [a child suffering abuse], the social worker

6   shall immediately make any investigation the social worker deems necessary . . . [.]"  County

7   Defendants argue that the investigation is discretionary.  However, the Code provides that in

8   conducting an investigation, the social worker "shall interview any child four years of age or older

9   who is a subject of an [abuse] investigation . . . [.]"  *Id.*  The Ninth Circuit has held that under this

10  code, social workers "have a legal obligation to investigate allegations of child abuse."  *Capp v.*

11  *Cnty. of San Diego*, 940 F.3d 1046, 1055 (9th Cir. 2019) (citing Cal. Welf. & Inst. Code § 328).

12  Thus, at this stage, Plaintiffs have alleged a mandatory duty to investigate a child abuse allegation

13  under Section 328.

14  Penal Code § 11164

15         California Penal Code Section 11164 states that "[i]n any investigation of suspected child

16  abuse or neglect, all persons participating in the investigation of the case shall consider the needs

17  of the child victim and shall do whatever is necessary to prevent psychological harm to the child

18  victim."  Cal. Penal Code § 11164.  The statute also states that the "intent and purpose of this

19  article is to protect children from abuse and neglect."  *Id.*  An enactment does not create a

20  mandatory duty if it "merely recites legislative policies that must be implemented through a public

21  agency's exercise of discretion."  *Cnty. of Los Angeles v. Superior Ct.*, 102 Cal. App. 4th 627, 639

22  (2002) ("*Terrell R.*") (citation omitted).  Because Penal Code Section 11164 does not indicate how

23  a person participating in an abuse investigation should consider the "needs of the child" or what

24  actions they should take, it does not establish a mandatory duty.  *See id.*  The Court therefore

25  **DENIES IN PART** and **GRANTS IN PART** the motion to dismiss the seventh claim.

26                                    **iii.    Eighth Claim**

27         County Defendants move to dismiss Plaintiffs' eighth claim that the County Defendants

28  breached mandatory duties under California Welfare & Institutions Code Section 16504, which

United States District Court
Northern District of California

United States District Court
Northern District of California

1    requires social workers to make an "immediate in-person response" where a child is "reported to

2    the county welfare services department to be endangered by abuse, neglect, or exploitation."  Cal.

3    Welf. & Inst. Code § 16504(a), (c).  The social worker "shall consider providing appropriate social

4    services to maintain the child safely."  *Id.* § 16504(a).  However, an in-person response is not

5    required when the department determines "based upon an evaluation of risk" (which "includes

6    collateral contacts" and "a review of previous referrals") that an in-person response is not

7    appropriate.  *Id.*  This statute does not provide a mandatory duty because it vests discretion in the

8    social worker and department by not requiring an in-person response where the department

9    determines that one is not required.  *See Cnty. of Los Angeles v. Superior Ct.*, 209 Cal. App. 4th

10   543, 554 (2012) (holding that "[a]n enactment requiring a public entity to conduct an investigation

11   under certain circumstances does not, without more, impose a mandatory duty to take certain

12   specific action.").  Plaintiffs argue that the County Social Workers did not review previous

13   referrals, but the language of the statute merely states that the evaluation of risk "includes

14   collateral contracts, a review of previous referrals, and other relevant information" – it does not

15   mandate reviewing referrals.  Cal. Welf. & Inst. Code § 16504(a).  Accordingly, this statute does

16   not establish a mandatory duty and the Court **GRANTS** the motion to dismiss this cause of action.

### iv.      Ninth Claim

18   County Defendants move to dismiss Plaintiffs' ninth claim that the County Defendants

19   breached mandatory duties under California Welfare & Institutions Code Section 16519 and Child

20   Welfare Services Regulation 31-405.22.  The Court takes up each statute in turn.

21   <u>California Welfare & Institutions Code § 16519</u>

22   California Welfare & Institutions Code Section 16519 merely recounts the legislative

23   finding and declaration regarding the importance of foster child safety.  Plaintiffs point to no

24   language in the statute that imposes a duty.  *See Terrell R.*, 102 Cal. App. 4th at 638-39.  This

25   statute does not establish a mandatory duty.

26   <u>Child Welfare Services Regulation 31-405.22</u>

27   Child Welfare Services Regulation 31-405.22 requires that a social worker "shall . . .

28   [m]onitor the child's physical and emotional condition, and take necessary actions to safeguard the

child's growth and development while in placement."  Chapter 31-405.22.  Child Welfare Services Regulation does not create a mandatory duty as it provides discretion to social workers.  *See Mueller v. Cnty. of San Bernardino*, 2018 WL 8130611, at *3 n.5 (C.D. Cal. May 9, 2018) (noting that while Section 31-405.22 "appear[s] to impose a duty to complete a process" it "afford[s] significant discretion to social workers"); *but see Walter v. Cnty. of San Diego*, 2020 WL 7024660, at *14 (S.D. Cal. Nov. 30, 2020) (finding that the use of the word "shall" indicated a mandatory duty in regulation 31-405.22 as social workers failed to monitor the child's deteriorating health).

The Court thus **GRANTS** the motion to dismiss the ninth cause of action.

### v.        Tenth Claim

Plaintiffs concede that Welfare & Institutions Code Section 16501.35 does not establish a mandatory duty.  ECF 227 at 21 n.1.  Accordingly, the Court **GRANTS** the motion to dismiss the tenth cause of action based on that statute.  County Defendants also move to dismiss the claim based on Child Welfare Services Regulation Section 31-125, which requires a social worker investigating a referral to have "in-person contact with all of the children alleged to be abused, neglected or exploited, and at least one adult who has information regarding the allegations." Defendants contend that the guideline does not provide instruction on how the social worker should determine the existence of any condition placing the child at risk.  County Mot. at 23. However, the requirement to have in-person contact provides a clear directive.  *See Gerrie v. Cnty. of San Bernardino*, 2019 WL 8013412, at *9 (C.D. Cal. Nov. 12, 2019) (finding that "the requirement that the social worker contact the child's parents as part of the investigation [pursuant to regulation 31-125] is mandatory").  The Court therefore **DENIES** the motion to dismiss the tenth cause of action.

### 2.        IIED and NIED Claims

County Defendants argue that they are immune from Plaintiffs' IIED and NIED claims because they are based on Defendants' allegedly inadequate investigation of child abuse.  County Mot. at 10-11.  Under California law, social workers are absolutely immune under Section 820.2 and 821.6 for discretionary decisions relating to the investigation of child abuse.  *Jacqueline T. v.*

United States District Court
Northern District of California

*Alameda Cnty. Child Protective Servs.*, 155 Cal. App. 4th 456, 466 (2007), *as modified* (Oct. 4, 2007) (citing cases); *see also Alicia T. v. Cnty. of Los Angeles*, 222 Cal. App. 3d 869, 881 (1990), *modified* (Aug. 16, 1990) (holding that "social workers must be absolutely immune from suits alleging the improper investigation of child abuse . . .").  Indeed, where social workers act under the "discretion invested in them under California law," they are immune.  *Fredenburg v. Cnty. of Santa Clara*, 2009 WL 10710451, at *11 (N.D. Cal. Nov. 4, 2009); *see B.H.*, 62 Cal. 4th at 191-92, 194 (holding that decisions "regarding determinations of child abuse [and] the potential risk to a child . . . are subjective discretionary" decisions and are entitled to immunity).  Claims 13, 18, and 19, which are asserted against all Defendants, do not specify what conduct by County Defendants renders them liable.  *See* TAC ¶¶ 177-182 (describing the conduct of "all defendants" as indifferent to Plaintiffs' safety and "enabl[ing]" the Centenos' abuse), 204-209 (same), 210-17 (incorporating allegations from TAC).  However, the TAC repeatedly emphasizes County Defendants' failure to properly investigate the allegations of child abuse.  TAC ¶¶ 31-84.  Such allegations fall squarely within the Government Code immunities discussed above.  *See Ortega v. Sacramento Cty. Dep't of Health & Human Servs.*, 161 Cal. App. 4th 713, 733 (2008) (finding that section 820.2 immunity applied to claims based on social workers' alleged failure to gather the pertinent facts before releasing child to her father, who then stabbed child in the heart and lung).  Accordingly, County Defendants' motion to dismiss claims 13, 18, and 19 for IIED and NIED is **GRANTED** with leave to amend on the basis that the claims appear to be barred by Government Code § 820.2.  *See Williams v. Cnty. of Monterey*, 2019 WL 5269025, at *6 (N.D. Cal. Oct. 17, 2019) (dismissing IIED claim under discretionary act immunity where plaintiff alleged that defendant "failed to conduct an adequate investigation").

## V.   MOTION TO DISMISS BY STATE OF CALIFORNIA AND AMY LAFFERTY

### A.   State of California's Motion

The California Department of Social Services (the "State") moves to dismiss each of the claims in the TAC alleged against the State.  ECF 220 at 2-3.  Plaintiffs do not oppose the motion to dismiss the State of California but contend that dismissal should be without prejudice.  ECF 226 at 8.

The "Eleventh Amendment prohibits federal courts from hearing suits brought against an unconsenting state." *Brooks v. Sulphur Springs Valley Elec. Co-op*, 951 F.2d 1050, 1053 (9th Cir. 1991(citing *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)). "The Eleventh Amendment's jurisdictional bar covers suits naming state agencies and departments as defendants, and applies whether the relief sought is legal or equitable in nature." *Id.* Because "it is clear...that the complaint could not be saved by amendment," dismissal is with prejudice. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

### B.      Amy Lafferty's Motion

Amy Lafferty, the State's adoption services representative in charge of the adoption of Pablo and Maci, moves to dismiss the claims brought against her based on sovereign immunity grounds and Plaintiffs' failure to state a claim.  ECF 220 ("Lafferty Mot.").  The Court addresses the arguments in the order presented in Lafferty's motion to dismiss.

### 1.      Sovereign Immunity

As a general matter, individual or "[p]ersonal-capacity suits seek to impose personal liability upon a government official for [wrongful] actions [s]he takes under color of . . . law," and in the course of official duties.  *Kentucky v. Graham,* 473 U.S. 159, 165 (1985) ("*Graham*").  By contrast, an officer sued in her official capacity "is not a suit against the official but rather is a suit against the official's office. . . . As such, it is no different from a suit against the State itself."  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  Thus, an officer sued in her official capacity is entitled to invoke sovereign immunity.  *Graham*, 473 U.S. at 167.

Plaintiffs do not specify in the TAC whether Lafferty is named in her individual or official capacity.  However, "a section 1983 suit against state actors necessarily implies a suit against the defendants in their personal capacities."  *Cerrato v. San Francisco Cmty. Coll. Dist.*, 26 F.3d 968, 973 n.16 (9th Cir. 1994); *see also Charfouros v. Board of Elections*, 249 F.3d 941, 956-57 (9th Cir. 2001) (construing ambiguous complaint liberally to allege claims against board members in their individual capacities).  The TAC brings Section 1983 claims based on Lafferty receiving abuse reports, failing to follow up on these reports or interview Jose Centeno or the Centenos' biological children, and pushing to place Pablo and Maci with the Centenos despite having

received concerning reports.  TAC ¶¶ 37-40, 54-55, 57-58.  Thus, while the TAC does not identify the basis for its suit against Lafferty, because the allegations are about her failure to act, the Court construes it as a suit against Lafferty in her individual capacity.  Therefore, Lafferty cannot avail herself of sovereign immunity at this stage.  *See Charfouros*, 249 F.3d at 956-57.

### 2.  Kristin K.'s NIED and IIED Claims

Lafferty argues that the statute of limitations for Kristin K.'s state law claims expired prior to the filing of the original complaint on February 25, 2022.  In California, NIED and IIED have a two-year statute of limitations.  Cal. Code Civ. Proc. § 335.1.  When a minor brings a claim, the statute of limitations is tolled until the age of majority.  Cal. Code Civ. Proc. § 352(a).  However, the tolling section does not apply to actions against a public entity or public employee for which a government claim is required.  Cal. Code Civ. Proc. § 352(b).  Even if tolling applied here, Kristin K. was born in January 1997 and turned 18 in January 2015, and thus her claims expired in January 2017, several years before she brought the instant suit.  ECF 220 at 19-20.  In addition, Kristin K. failed to respond to this argument, thus conceding it.  *See Namisnak v. Uber Techs., Inc.*, 444 F. Supp. 3d 1136, 1146 (N.D. Cal. 2020) (quoting *Ardente, Inc. v. Shanley*, 2010 WL 546485, at *6 (N.D. Cal. Feb. 9, 2010)) ("Plaintiff fails to respond to this argument and therefore concedes it through silence.").  Accordingly, the Court **DISMISSES** Kristin K.'s IIED and NIED claims against Lafferty with prejudice.

### 3.  Section 1983 Claims (Counts 1-3)

Lafferty argues that Plaintiffs improperly contest state court determinations by alleging that Lafferty "fail[ed] to ensure adequacy and primacy of relative caregiver placements."  Lafferty Mot. at 21; TAC ¶ 93.  To the extent that Plaintiffs attempt to contest the adoption proceedings, the Court "lack[s] jurisdiction to review the final determinations of a state court in judicial proceedings," *Doe & Assocs. Law Offices v. Napolitano*, 252 F.3d 1026, 1029 (9th Cir. 2001), and on that basis, Lafferty contends, the claims must be dismissed.  Lafferty also argues that she is protected from suit by absolute and qualified immunity and that Plaintiffs failed to show deliberate indifference, state-created danger, or interference with proper placement of Plaintiffs.  The Court addresses each argument below.

23

### a.   Absolute and Qualified Immunity

Lafferty argues that she is entitled to absolute immunity for the quasi-judicial and quasi-prosecutorial functions of her job.  *See Hardwick*, 844 F.3d at 1115.  As noted, "social workers are not afforded absolute immunity for their investigatory conduct, discretionary decisions or recommendations."  *Cox*, 913 F.3d at 837 (quoting *Tamas*, 630 F.3d at 842).  Plaintiffs allege that Lafferty ignored reports of abuse, failed to carry out her duty of investigating reports of abuse, and assisted with presenting false information.  TAC ¶¶ 37, 53-54, 57-58, 100, 138.  Lafferty merely states that she is entitled to absolute immunity for acts where she was engaged in the quasi-prosecutorial and quasi-judicial functions of her job.  Lafferty Mot. at 23.  She does not argue what alleged conduct falls within those functions, and she thus has failed to meet her burden at this stage to show that she is entitled to absolute immunity.  *See Miller*, 335 F.3d at 898.

Lafferty also argues that she is entitled to qualified immunity because she was involved in decision-making for foster or adoption placements and investigation of claims of abuse.  Lafferty Mot. at 23-24.  "[T]o overcome qualified immunity, Plaintiffs must show that [defendants] (1) 'violated a federal statutory or constitutional right' and (2) 'the unlawfulness of their conduct was clearly established at the time.' "  *Ballentine v. Tucker*, 28 F.4th 54, 61 (9th Cir. 2022) (quoting *District of Columbia v. Wesby*, 583 U.S. 48 (2018)).  Under the Fourteenth Amendment, the government has affirmative duties to protect foster children in state custody from harm inflicted by a foster parent.  *Tamas*, 630 F.3d at 842; *see Lipscomb v. Simmons*, 962 F.2d 1374, 1379 (9th Cir. 1992).  Typically, once the foster child is adopted, the adoptive parents become responsible for caring for the child and not the state.  *Tamas*, 630 F.3d at 843.  "However, state actors may nevertheless incur liability under § 1983 if state officials affirmatively created a danger that the adopted child would not have otherwise faced."  *Id.* (citing *L.W. v. Grubbs,* 974 F.2d 119, 121 (9th Cir. 1992)).  Since 1992, when the Ninth Circuit decided *Tamas*, there was a clearly established due process right to liberty, safety, and care or treatment for a child in foster care.  *Id.* at 846-47 ("[o]nce the state assumes wardship of a child, the state owes the child, as part of that person's protected liberty interest, reasonable safety and minimally adequate care and treatment appropriate to the age and circumstances of the child.") (quoting *Lipscomb*, 962 F.2d at 1379).  This was so in

1    2006 when Lafferty first became involved in Plaintiffs' care.

2            Here, by ignoring reports of the Centenos' abuse, pushing for their adoption of Plaintiffs,

3    and pushing forward with their adoption of additional children despite reports of concerns about

4    Plaintiffs' welfare, TAC ¶¶ 37, 54-58, Lafferty was deliberately indifferent and affirmatively

5    created danger for Plaintiffs.  *See Tamas*, 630 F.3d at 843-44 (finding that the state "affirmatively

6    created the particular danger that exposed [the child] to harm" by approving foster care licenses

7    for foster parents to adopt the child despite referrals reporting the parents for physical and sexual

8    abuse).  Thus, Plaintiffs have adequately alleged that Lafferty violated a clearly established liberty

9    right and Lafferty is not entitled to qualified immunity on the Section 1983 claims at this stage.

10                          **b.      Deliberate Indifference and State Created Danger**
                                      **(Counts 1 and 2)**

12           Lafferty seeks to dismiss the first cause of action.  Plaintiffs allege that Lafferty received

13   reports that detailed abusive behavior within the Centeno household, that the Centenos were

14   "overwhelmed," that Michelle K., P.K., and Kaya K. were at "high risk" for abuse, that additional

15   children in the household would increase the already existing danger, and that Lafferty ignored

16   and failed to follow up on these reports and pushed for the Centenos' adoption of additional

17   children.  TAC ¶¶ 37, 55-57.  Lafferty argues that there are no allegations that she had the

18   authority to correct actions of other defendants and that an absence of state records does not equate

19   to a lack of action on her part.  Lafferty Mot. at 22.  At this stage, Plaintiffs have alleged that there

20   was an objectively substantial risk of harm, Lafferty was subjectively aware of facts from which

21   an inference could be drawn of the risk of serious harm, and that a reasonable officer would have

22   been compelled to draw that inference.  *See Momom-Caselis*, 987 F.3d at 845.  Therefore, the

23   Court **DENIES** the motion to dismiss the Section 1983 claim in count one.

24           Lafferty also argues that the state-created danger claim in count two fails as it requires

25   "affirmative conduct on the part of the state in placing the plaintiff in danger."  Lafferty Mot. at

26   22-23 (quoting *L.W.*, 974 F.2d at 121).  In their opposition, Plaintiffs do not contest this, thus

27   conceding it.  *See Namisnak*, 444 F. Supp. 3d at 1146.  The Court therefore **DISMISSES** the

28   Section 1983 claim in the second count without leave to amend.

United States District Court
Northern District of California

### c.  Interference with Proper Placement (Count 3)

Plaintiffs allege that Lafferty interfered with proper placement of Plaintiffs by providing false information to the courts. TAC ¶ 106. However, Plaintiffs have not alleged what information Lafferty provided that was wrongful or false, to which court, or in what proceeding. Accordingly, the Court **DISMISSES** the third cause of action with leave to amend.

### 4.  Section 1985 Claims (Counts 1-3)

Lafferty moves to dismiss the Section 1985 claims because Plaintiffs fail to allege any facts showing conspiracy. Lafferty Mot. at 24. "To state a cause of action under § 1985, a complaint must allege (1) a conspiracy, (2) to deprive any person or a class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, (3) an act by one of the conspirators in furtherance of the conspiracy, and (4) a personal injury, property damage or a deprivation of any right or privilege of a citizen of the United States." *Gillespie v. Civiletti*, 629 F.2d 637, 641 (9th Cir. 1980) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102-103 (1971)). "A mere allegation of conspiracy without factual specificity is insufficient." *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 626 (9th Cir. 1988). The TAC contains no factual allegations that Lafferty conspired to deprive Plaintiffs of their rights and states only legal conclusions. Therefore, the Court **DISMISSES** the conspiracy claims against Lafferty in Counts 1-3 with leave to amend.

### 5.  Breach of Mandatory Duty (Counts 6, 7, and 9)

Lafferty also moved to dismiss Plaintiffs' breach of mandatory duty claims. Plaintiffs bring three claims against Lafferty for breach of mandatory duties under California Child Welfare Services Program, Welfare and Institutions Code, California Adoption Regulations, and California Penal Codes. The Court takes up each claim for breach of mandatory duty in turn.

### a.  Sixth Claim

Plaintiffs bring the sixth cause of action under Child Welfare Services Program 31-405.12, California Welfare & Institutions Code Section 16507.5, and California Adoption Regulations 35177 and 35183. Lafferty argues that California Child Welfare Services Program 31-405.12, and California Welfare & Institutions Code Section 16507.5 do not establish a mandatory duty for her.

United States District Court
Northern District of California

1   Lafferty Mot. at 27-28.  Plaintiffs fail to respond to Lafferty's arguments about these two

2   provisions, thus conceding they do not establish a mandatory duty for Lafferty.  *See Namisnak*,

3   444 F. Supp. 3d at 1146.  California Adoption Regulations 35177 and 35183 require the agency to

4   conduct face-to-face interviews with adoptive applicants and individuals residing in the household.

5   Plaintiffs allege that Lafferty failed to conduct these interviews.  For the same reasons stated in

6   Section IV(C)(1)(b)(i), *supra*, Plaintiffs have sufficiently alleged a mandatory duty based on these

7   two regulations.  The Court **GRANTS** in part and **DENIES** in part the motion to dismiss the sixth

8   claim.

9             **b.**    **Seventh Claim**

10         Plaintiffs bring count seven under California Welfare and Institutions Code Section 328

11  and Penal Code Section 11164.  Plaintiffs fail to argue what mandatory duty Welfare &

12  Institutions Code § 328 requires or how it applies to Lafferty, thus conceding the claim.  ECF 226

13  at 16; *see Namisnak*, 444 F. Supp. 3d at 1146.  As explained *supra* in Section IV(C)(1)(b)(ii),

14  Penal Code § 11164 does not establish a mandatory duty as it merely requires that those

15  participating in child abuse investigations do "whatever is necessary" to prevent harm and

16  "consider the needs of the child."  This allows for discretion and thus cannot establish a mandatory

17  duty.  *See Haggis*, 22 Cal. 4th at 498.  The Court therefore **DISMISSES** the seventh cause of

18  action for breach of a mandatory duty as to Lafferty.

19            **c.**    **Ninth Claim**

20         Plaintiffs' ninth claim relies on Welfare & Institutions Code Section 16519 and Child

21  Welfare Services Regulation 31-405.22.  Welfare & Institutions Code Section 16519 merely

22  recounts the legislative finding and declaration regarding the importance of foster child safety.

23  Plaintiffs point to no language in the statute that imposes a mandatory duty.  *See Terrell R.*, 102

24  Cal. App. 4th at 638-39.  Child Welfare Services Regulation 31-405.22 similarly does not

25  establish a mandatory duty on Lafferty.  Regulation 31-001.1 states that the requirements in 31-

26  005 through 31-525 shall be met "by the county in the administration of child welfare services."

27  Section 31-001.2 states that these requirements shall be met by "county probation departments."

28  These regulations do not apply to Lafferty, who works for the State, not the County.  Plaintiff does

1    not respond to Lafferty's argument on this point, thus conceding the issue.  *See Namisnak*, 444 F.

2    Supp. 3d at 1146.  The Court **DISMISSES** this claim as to Lafferty.

3                        **6.    Michelle K. and P.K.'s IIED Claims**

4          Michelle K. and P.K. bring IIED claims against Lafferty, which she seeks to dismiss.

5    Lafferty argues that she is immune from these claims under Government Code Section 820.2, and

6    that Plaintiffs fail to state a claim.  Lafferty Mot. at 24, 29-30.  The Court addresses immunity first

7    as it is a threshold issue.

8          Lafferty argues that she is immune from liability on the IIED claims pursuant to California

9    Government Code Section 820.2.  For the same reasons discussed in Section IV(C)(2), the Court

10   **DISMISSES** with leave to amend claim 13 for IIED as on the basis that the claims appear to be

11   barred by Government Code § 820.2.

12                        **7.    Punitive Damages**

13         Lafferty finally argues that California Government Code Section 818 precludes punitive

14   damages for state law claims against the State and by extension, her because she is sued in her

15   official capacity.  Lafferty Mot. at 31-32.  Plaintiffs fail to respond, and thus concede the point.

16   *See Namisnak*, 444 F. Supp. 3d at 1146.  The Court thus **GRANTS** Lafferty's motion to dismiss

17   the demand for punitive damages.

18   **VI.    CONCLUSION**

19         For the foregoing reasons, the Court grants in part and denies in part the motions to

20   dismiss.

21   As to the County:

22   - The Court **DENIES** the motion to dismiss counts one, two, four, and ten.

23   - The Court **GRANTS** the motion to dismiss count three with leave to amend.

24   - The Court **GRANTS** the motion to dismiss counts eight and nine.

25   - The Court **GRANTS** the motion to dismiss counts thirteen, eighteen, and nineteen with

26     leave to amend, and **GRANTS IN PART** and **DENIES IN PART** the motion to dismiss

27     counts six and seven.

28

As to the State:

- The Court **GRANTS** the State's motion to dismiss the Third Amended Complaint with prejudice.

As to Lafferty:

- The Court **DENIES** the motion to dismiss the Section 1983 claim in count one.
- The Court **GRANTS** the motion to dismiss the Section 1983 claims in counts two and three with leave to amend.
- The Court **GRANTS** the motion to dismiss counts one, two, and three under section 1985 with leave to amend.
- The Court **GRANTS IN PART AND DENIES IN PART** the motion to dismiss count six.
- The Court **GRANTS** the motion to dismiss counts seven and nine.
- The Court **GRANTS** the motion to dismiss count thirteen with leave to amend.
- The Court **GRANTS** the motion to dismiss counts eighteen and nineteen with prejudice.
- The Court **GRANTS** the motion to dismiss the demand for punitive damages.

     **IT IS SO ORDERED.**

Dated: September 27, 2024

_____
**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**